**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CUONG H. MAI,**

       **Plaintiff,**

**v.**                                   **Case No.  8:09-cv-1432-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**
_____/

# O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.

## I.

Plaintiff was forty-one years of age at the time of his administrative hearing in May 2006 and forty-four years at the time of his supplemental hearing in January 2009.  He stands 5 feet, 3 inches tall and weighed 216 pounds.  Plaintiff has a masters degree in marketing.  His past relevant work was in the restaurant business as an assistant manager and bar manager. Plaintiff applied for disability benefits in September 2004, alleging disability as of the same date, by reason of heart problems, high blood pressure, sleep apnea, depression and anxiety. The Plaintiff's application was denied originally and on reconsideration.

At his request, the Plaintiff received a *de novo* hearing before an Administrative Law Judge ("ALJ") in May 2006.  Plaintiff, who was represented, testified that he was working part-time, approximately twenty hours per week at a restaurant.  He last worked full-time in September 2004.  He testified to having depression but has not treated, nor taken medication, for it.  He has a history of a heart attack in 1998, catheterization and stent placement, high blood pressure, cardiac problems, hemorrhoids, and sleep apnea.  He is able to drive a car and does so 2 to 3 times per day taking his wife to and from work and his daughter to and from school.  He can lift 10 to 15 pounds at most and can stand about 10 to 15 minutes.  He does not have trouble sitting.  He suffers from muscle spasms known as restless leg syndrome.  Plaintiff testified that his weight was going up for some reason and he was at 216 pounds, up from 176.  Because of his obstructive sleep apnea, Plaintiff does not sleep through the night.  He takes approximately 5 short naps of 5 to 10-minute duration throughout the day because of it.  Sometimes he will fall asleep at the table in the middle of eating.  His wife does the chores around his house.  (R. 208-18).

The ALJ also took testimony from Irvin Roth a vocational expert ("VE").  On an assumption allowing for a maximum lift of 15 pounds but needing a sit/stand option, the VE identified jobs such as telemarketing, surveillance monitor, cashier work and ticket taker work as available to such person.  (R. 218-20).

By his decision of July 18, 2006, the ALJ credited Plaintiff with status post myocardial infarction with a catheterization and stent placement, history of depression/anxiety, coronary artery disease, hypertension, sleep apnea and hemorrhoids.

Nonetheless, he determined Plaintiff capable of performing some work in the national economy and thus not disabled.  (R. 12-18).  On appeal to the district court, the Commissioner's decision was reversed and the case remanded for further consideration.[1]

A supplemental administrative hearing on remand was conducted in January 2009, wherein the Plaintiff was again represented by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.  The ALJ recounted his prior findings of heart attack in 1998, catheterization and stent placement, cardiac artery disease, high blood pressure and history of hemorrhoids.  Plaintiff confirmed that he still had no treatment for depression or anxiety.  He was still using a CPAP[2] machine for his sleep apnea, but he now uses a nose plug, rather than a mask.  Plaintiff underwent triple by-pass surgery in the month prior to his administrative hearing.

Upon questioning from his lawyer, Plaintiff testified that due to his sleep apnea, he falls asleep at least four times during the day.  He sleeps for 15 to 20 minutes up to an hour or two.  He does not use the CPAP machine during the day.  According to Plaintiff, his only alternative is surgery which he cannot afford.  Plaintiff also suffers from headaches three to four times a day and has been getting them for the past five to six years.  He treats his

---

[1]The court determined that the ALJ's failure to explain his rejection of the Plaintiff's testimony concerning the daytime effects of Plaintiff's sleep apnea warranted a remand.  As for the Plaintiff's other contentions unrelated to the sleep apnea, the court found no merit. (R. 242-251).

[2]Continuous positive airway pressure therapy (CPAP) uses a machine to help a person who has obstructive sleep apnea (OSA) breathe more easily during sleep.  A CPAP machine increases air pressure in your throat so that your airway does not collapse when you breathe in. http://www.webmd.com/sleep-disorders/sleep-apnea/continuous-positive-airway-pressure-cpap-for-obstructive-sleep-apnea.

3

migraines with over-the-counter medication.  He testified that he has not complained to his

doctors about the migraines because their solution would be to prescribe more medication

which he cannot afford.  He currently pays $600 per month for medication.

Plaintiff acknowledged he was working part-time but not during the last couple of

months.  He testified he earned $5,000 in 2008 and about the same the year before.  He was

working approximately 20 hours per week at a restaurant in 2006.  A couple months prior to

his hearing Plaintiff stopped working because of problems breathing and with his heart.

(R. 304-15, 317).

Next, the ALJ called vocational expert, Robert Harvey.  Upon a hypothetical

assuming "a fifteen-pound lift, sit/stand at will," such individual could not do Plaintiff's past

relevant work but could perform jobs including small products assembler, line inspector, and

merchandise marker.  With the added limitation of being off the job for 15 to 60 minutes due

to falling asleep during the day, there would be no work available.  Similarly, if the

hypothetical individual suffered headaches 3 to 4 times per day for 30 to 45 minutes duration

during which he could not work, there would be no competitive employment available.

(R. 316-17).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed adequately by the parties' memoranda and are set forth herein as

necessary.

By his decision of May 14, 2009, the ALJ determined that while Plaintiff has severe

impairments related to coronary artery disease status post remote myocardial infarction and

stent placement and status post recent by-pass surgery, hypertension, obstructive sleep apnea, allergic rhinitis, and history of hemorrhoids and polypectomy, he nonetheless had the residual functional capacity to perform a wide range of sedentary work lifting up to 15 pounds and alternating between standing and sitting at will. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 224-31).

II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate

5

that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises four claims on this appeal.  As stated by the Plaintiff, they are as follows:

6

(1) The ALJ erred when he failed to adequately explain why he discounted Plaintiff's testimony concerning his problems falling asleep during the day due to his obstructive sleep apnea and his chronic headaches;

(2) The ALJ erred by determining that Plaintiff's depression, anxiety, and migraine headaches were non-severe impairments;

(3) The ALJ failed to properly consider the combined effects of all Plaintiff's impairments and subjective complaints; and

(4) The ALJ erred in his duty to fairly and fully develop the record by failing to pose a hypothetical question to the vocational expert which comprehensively described his impairments.

On his first claim, Plaintiff submits that he has a long-standing, documented diagnosis and treatment for obstructive sleep apnea, about which he testified at his initial and supplemental hearings.  Additionally, he testified at both hearings that he suffers from headaches 3 to 4 times per day.  Plaintiff urges that the ALJ's reasons for rejecting his subjective complaints were legally insufficient where the credibility determination was based on the lack of documentation of complaints by Plaintiff to his doctors.  By his argument, doctors do not always note a patient's complaints and the law does not require a doctor to document subjective complaints so the lack of such documentation is no reason to discredit him.  As for the significance of these conditions, he notes that the VE testified that the Plaintiff could not work if he took naps frequently during the work day or had frequent headaches as he claimed.  Further, Plaintiff urges the ALJ's discrediting of Plaintiff's

subjective complaints regarding his mental impairment based on Plaintiff's minimal daily activities was legally insufficient.  (Doc. 22 at 9-12).

   The Commissioner responds that although the Plaintiff was diagnosed with sleep apnea, the record does not support Plaintiff's allegations regarding the effects of this condition.  The decision reflects the ALJ's full consideration of the medical evidence including the records of Dr. Kumar, M.D., who treated Plaintiff for sleep apnea and by his records, Plaintiff's condition was fairly well addressed once the problems with use of the CPAP machine were addressed and there is no indication of Plaintiff's continuing complaints of daytime sleepiness to any of his doctors.  As the ALJ determined, no doctor opined that Plaintiff was unable to work due to his sleep apnea or any other medical condition.  Similarly, as to Plaintiff's subjective complaints of headaches, the ALJ noted there was only one medical report of a complaint of headaches to Dr. Chang, M.D., in November 2006, and otherwise there is no complaint or diagnosis of headaches or migraines.  In fact, Plaintiff specifically denied headaches when seen by Dr. Kumar.  As for the ALJ's consideration of the Plaintiff's daily activities in discounting any mental impairment, the Commissioner acknowledges that while not dispositive, a claimant's activities may nevertheless show that the plaintiff's symptoms are not as limiting as alleged.[3]  Here, Plaintiff admitted an active daily regimen and the fact that he had worked up to twenty hours a week even after his alleged onset date. Further, the medical evidence did not support a severe limitation.  (Doc. 23 at 4-8).

---

   [3]The Commissioner cites 20 C.F.R. § 404.1529(c)(3)(I); SSR 96-7p; *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984), in support.

In this Circuit, where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). However, the lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

As the decision reflects, the ALJ acknowledged the sleep apnea, the headaches, and the claim of depression and anxiety.[4] With regard to the latter, the ALJ concluded at step two of the evaluation process that the condition was not severe. The conclusion was based on the lack of medical support for the claim. As the ALJ noted, Plaintiff himself admitted that he had not sought treatment for the conditions, and the medical record did "not document complaints of, or any abnormal mental status findings to support that the claimant was in any way limited by symptoms of depression or anxiety." (R. 227). The ALJ further noted that while he complained of difficulty handling stress, the Plaintiff reported that he remained able

---

[4]As Plaintiff presents this claim, he does not contend that the ALJ did not abide by the applicable "pain standard" only that he misapplied it. It is clear from the decision that the ALJ recognized the standard applicable in this circuit and that he applied it. (R. 227-28).

9

to work on a part-time basis as a restaurant/bar manager and he engaged in a number of daily activities such as driving his child to and from school and his wife to work, cooking, shopping, and doing laundry and getting along with others.  While Plaintiff complains that the ALJ should not have relied on these daily activities, it is apparent that the primary reason that the ALJ rejected any mental limitations is because the medical record did not support any severe condition, a matter further supported by the Plaintiff's active daily regimen.  Here, Plaintiff makes no showing that he suffered severe depression or anxiety, and I find no error in the ALJ's handling of the matter.

As for the sleep apnea and the headaches, the ALJ acknowledged both but discounted the alleged symptoms arising from both essentially for lack of support in the medical evidence.  (R. 228-29).  By my review, the rationale supplied by the ALJ for discounting the subjective evidence is consistent with the applicable standard and supported by substantial evidence.

As for the headaches, the ALJ acknowledged Plaintiff's hypertension and his claims for multiple daily migraine headaches extending back over a period of 5 to 6 years but discounted the claims essentially because of the lack of medical support for the symptoms. Thus, upon the ALJ's review of the medical evidence, he found only minimal medical support for the claim.  By his review, the ALJ could find only one instance in the record from Dr. Chang where Plaintiff even complained of headaches.  While Plaintiff had testified to three or four migraines a day for several years, the ALJ found that his treating doctor, Dr. Chang, had never diagnosed migraines nor did his records show any other complaints or findings related

10

to headaches or other significant problems with blood pressure.  As the ALJ further noted, Plaintiff indicated that he treated his migraines with over-the-counter medication, which cleared the headaches in 30 to 45 minutes.

Upon my own review of the record, I find no fault in the ALJ's discussion and rejection of the claim to multiple migraine headaches on a daily basis.  Nothing in the records from any treating doctor would support the claim of migraine headaches or even simple headaches to the extent claimed by Plaintiff, and it was not error for the ALJ to discount the purported symptoms by reference to these records.  Neither Dr. Mei Chang nor Dr. Alok Kumar noted significant complaints of headaches, nor treatment for the same.  Moreover, neither doctor imposed limitations on Plaintiff because of the condition.[5]

As for the sleep apnea, this is a closer issue.  The condition was well-documented by Dr. Kumar, and Plaintiff did complain to the doctor of daytime sleepiness and fatigue.  Such was not disputed by the ALJ who fairly recounted the ongoing complaints about the CPAP machine and treatment from this doctor.  (R. 229).  However, the ALJ rejected the Plaintiff's testimony that the condition documented by those records caused him to sleep during the daytime four times a day for one to three hours.  In discounting that testimony, the ALJ observed that after the second complaint in February 2006, the Plaintiff did not complain again of problems with using the CPAP machine.  Further, none of the treatment records

---

[5]As for Dr. Chang, see (R. 129-38, 188-205, 286-91, 301).  A review of the reports from Dr. Kumar, who also addressed Plaintiff's hypertension on occasion, reveals a similar lack of support for severe headaches.  (R. 148-51, 181-87, 282-85).  Similar to Dr. Chang's reports, in only one instance did Plaintiff make any complaints of headaches to Dr. Kumar. *See* (R. 149).

documented that Plaintiff had complained to this doctor or any other doctor of continuing

daytime sleepiness or falling asleep at least 4 times per day for 1-3 hours at a time.  (R. 229).

By the ALJ's assessment, the claim that Plaintiff had to sleep from 4 to 12 hours during the

day, every day was also inconsistent with Plaintiff's reported daily activities.  *Id.*

In the end I am obliged to find that the conclusion by the ALJ that this testimony was

inconsistent with the medical evidence including Plaintiff's self-reports is supported by

substantial evidence.  On two occasions, Dr. Kumar's notes reflect Plaintiff's report of

excessive daytime sleepiness, the first at his initial visit in December 2004 (R. 148) and the

second in March 2005 (R. 185).  Thereafter, there are no such further complaints by the

Plaintiff, and the records suggest that after some initial difficulty, Plaintiff better tolerated the

CPAP machine at night.  (R. 181-87, 282-85).  In these matters, it is for the ALJ to evaluate

and weigh the evidence and to assess the credibility of the witnesses.  Here, the ALJ offers a

rational record-based statement that the medical record did not support the degree of daytime

sleepiness claimed by the Plaintiff.  He further found that Plaintiff's work history, which

appears to have included substantial part-time work up to shortly before the hearing, and daily

driving, cooking, and household chores suggested that the testimony was overstated.  Given

the applicable standard of review, I am obliged to conclude that the reasons stated are

supported by substantial evidence and Plaintiff is not entitled to relief on this claim.

On his second claim, Plaintiff urges that the ALJ erred in failing to find his

depression, anxiety, and migraine headaches to be severe impairments, and further that the

ALJ erred in discounting the conditions because of a lack of treatment when Plaintiff testified

that he could not afford treatment. (Doc. 22 at 13-14). In response, the Commissioner argues that the absence of a diagnosis by any doctor that Plaintiff suffered from depression, anxiety, or other mental condition and the lack of treatment or even any complaint of mental health issues provides substantial evidence to support the ALJ's findings that Plaintiff did not have a severe mental impairment. As for Plaintiff's claim that he could not afford treatment for his depression, the Commissioner discounts the same because Plaintiff sought and received treatment for his other complaints, and he clearly could have and would have mentioned his mental condition to one of the doctors with whom he was treating if such was bothering him. Regarding Plaintiff's headaches, the Commissioner notes that the condition was attributed to his hypertension, an impairment the ALJ did find to be severe, although he found no support in the record for the migraine headaches claimed by Plaintiff. (Doc. 23 at 8-12).

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits his ability to do basic work activities, then he is not disabled. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering, and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing

with changes in the work setting; and the use of judgment. *Id.*  In application, this inquiry is a "threshold" inquiry.  It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *Id.*

        Insofar as Plaintiff argues that the ALJ erred at step two, he is incorrect.  At that step of the evaluation process called for by the regulations, the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at that step.  *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir.1987).  Here, the ALJ credited Plaintiff with a number of severe impairments at this step and then proceeded through the evaluation process.  Thus, there is no error at step two requiring a remand.  Beyond that consideration, the medical evidence fully supports the ALJ's conclusion that neither the depression and anxiety nor the headaches were severe impairments as such are defined under the Act.  As set forth above, Plaintiff himself admitted that he had not sought treatment for the conditions and the medical record did not document complaints of, or any abnormal mental status findings to support that the claimant was in any way limited by symptoms of depression or anxiety.[6]  Also as addressed above, the medical record did not

_____

        [6]Plaintiff did not expressly claim that he had not sought treatment for financial reasons.  At the first hearing, he simply indicated that he was handling it himself.  (R. 209-10).

support Plaintiff's claims of headaches, migraine or otherwise.  While he was treated for

hypertension, there is a noticeable lack of support for the persistent headaches he claimed at

the hearing.  Plaintiff asserts that he cannot be faulted for the lack of care because he could

not afford it, but such is not actually established, and the contrary is suggested by his

consistent and thorough care by Drs. Chang and Kumar.  Clearly, he had ample opportunity

with both doctors to identify his symptoms and that he failed to do so surely undermines his

claim.

Significantly, Plaintiff also fails to demonstrate any prejudice in connection with the

alleged errors. Thus, he does not identify any functional limitations arising from the

depression or anxiety.  As for the headaches, a symptom Plaintiff attributed to his

hypertension, the ALJ adequately discounted the testimony from the record.  In these

circumstances, even if there was error, a remand would serve no useful purpose at all.

On Plaintiff's third claim, he submits that the ALJ failed to consider the combined

effects of his impairments and subjective complaints.  Specifically, Plaintiff references the

same conditions: obstructive sleep apnea, depression, anxiety, and chronic daily headaches.

And he adds that the ALJ failed to even mention his obesity.  Because the ALJ failed to assign

any limitations to these conditions, the matter should be reversed and remanded for further

consideration.  (Doc. 22 at 14-17).

The Commissioner responds that the ALJ properly considered Plaintiff's

impairments as a whole and credited him with limitations which permitted sedentary work,

and Plaintiff has failed to demonstrate any error in the conclusions.  As for his obesity, the

Commissioner notes that no doctor made a diagnosis of such, and in any event, Plaintiff did not cite any evidence indicating his weight caused any limitations on his ability to perform a wide range of sedentary work.  Moreover, Plaintiff did not allege obesity as a basis for his alleged disability, either in documents submitted with his claim or at his hearings, and thus the ALJ was not required to specifically discuss his weight, particularly given the absence of medical evidence to support Plaintiff's allegation that his obesity affected his ability to work. (Doc. 23 at 12-15).

Case law requires that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling.  In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.  *Id.* at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

As set forth above, each of the conditions– sleep apnea, depression, anxiety, and daily headaches– was addressed by the ALJ individually, and as the decision reflects, the impairments were considered in combination to the extent that they existed.  Thus, the ALJ noted that the claimant suffered certain "severe combination of impairments" but that he "did not have an impairment or combination of impairments" that met or equaled a listed impairment.  (R. 226-27).  Such statements reflect the ALJ's consideration of the combination

16

issue.  *See Jones,* 941 F.2d at 1533.  Further, the decision reflects that the ALJ considered the whole of the impairments in arriving at the residual functional capacity for sedentary work.

As for Plaintiff's alleged obesity, the Commissioner is correct that Plaintiff did not allege obesity as a basis for his alleged disability, either in documents submitted with his claim or at his hearings.  Apart from having the Plaintiff identify his weight at the first hearing, his counsel failed to make further argument about the same, and the claim is appropriately denied by the court on that basis alone.  *See Alacare Home Health Servs., Inc., v. Sullivan,* 891 F.2d 850 (11th Cir. 1990).  In any event, Plaintiff wholly fails to identify functional limitations actually caused by his weight that would prevent him from performing the sedentary work determined by the ALJ.  In these circumstances, a remand is simply unwarranted.

On his final claim, Plaintiff urges error in the ALJ's failure to fully develop the record.  More particularly, he urges error in the ALJ's failing to pose a hypothetical question to the VE which comprehensively described his impairments.  Specifically, Plaintiff argues that the hypothetical posed to the VE failed to take into consideration Plaintiff's limitations including shortness of breath, his excessive need to sleep during the day, his inability to stay on task due to severe fatigue or symptoms of depression and migraine headaches, angina pain, and obesity.  (Doc. 22 at 17-19).  The Commissioner responds that the ALJ did not need to include Plaintiff's unsupported allegations in his hypothetical to the VE.  Again, the Commissioner notes the lack of medical evidence to support Plaintiff's allegations that his alleged shortness of breath, fatigue, or angina pain prevented Plaintiff from performing

17

sedentary work.  Similarly, Plaintiff failed to provide evidence to support his complaints of daytime sleepiness, depression, headaches, and obesity.  (Doc. 23 at 16-18).

Plaintiff is correct that case law in this circuit requires both that the ALJ develop a full and fair record and that he employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).  However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  For reasons discussed above, the ALJ was not obliged to include any purported  limitations caused by severe fatigue or symptoms of depression and migraine headaches, angina pain, and obesity which were not otherwise established in the record.[7]  As for the matter of daytime sleepiness and headaches, these claims were addressed at the hearing

---

[7]While the ALJ has the basic duty to develop a full and fair record, I find it problematic when counsel declines to explore these matters with the VE when afforded the opportunity to do so.  Plaintiff offers no explanation why his attorney at the hearing failed to address these matters with the VE when given the opportunity to question him and why the matter is first raised on this appeal.

In any event, here, as the ALJ discussed with the Plaintiff, Plaintiff had been working up to twenty hours a week managing a restaurant.  He stopped when he again developed heart and breathing problems.  However, records from the cardiac by-pass surgery which followed indicated that Plaintiff recovered quickly, and from those records, the ALJ concluded that Plaintiff's heart condition, chest pain, and breathing problems would not prevent him from returning to work at a sedentary level.  Plaintiff makes no showing to contradict this.

18

with the VE opining that such limitations as claimed by Plaintiff would prevent all work.

Significantly, Plaintiff fails to identify any limitations supported by the evidence which should

have been included by the ALJ in his hypothetical which were not.  Absent some showing of

prejudice, a remand would serve no useful purpose.  By my consideration, while the ALJ is

surely bound to develop a full and fair record and to employ complete hypotheticals, Plaintiff

fails to demonstrate that such was not done here.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 13th day of September 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record